

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LILA T. GAVIN, on behalf of herself ) 
and all others similarly situated, ) 
 ) 
        Plaintiff, ) 
 ) 
v. )    **No. 07 C 3078**
 ) 
AT&T CORP., a New York Corporation, )    **Judge Ruben Castillo**
GEORGESON SHAREHOLDER ) 
COMMUNICATIONS, INC., a ) 
Delaware Corporation, and DOE ) 
CORPORATIONS 1 to 1,000 ) 
 ) 
        Defendants. ) 

## MEMORANDUM OPINION AND ORDER

Lila T. Gavin ("Plaintiff") brought this long-running putative class action against

Defendants AT&T Corp. ("AT&T") and Georgeson Shareholder Communications, Inc.

("Georgeson") (collectively "Defendants"), alleging fraud claims in connection with a notice sent

to AT&T's shareholders following a merger. (R. 1, Not. of Removal, Ex. 5, First Amend.

Compl. ("FAC").) The case was originally filed in Illinois state court in 2001 and was removed

by Defendants to the Northern District of Illinois shortly thereafter under the Securities Litigation

Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77p(b). (*Gavin v. AT&T,* 01cv2721 (N.D. Ill.

filed Apr. 17, 2001) ("*Gavin I*"). After nearly five years of litigation, summary judgment was

awarded in favor of Defendants, and Plaintiff appealed. *See Gavin v. AT&T Corp.*, 464 F.3d 634,

640-41 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 1492 (2007).

On appeal, the Seventh Circuit determined that the case had been improperly removed under SLUSA, and that, because the case essentially involved "garden-variety" consumer fraud claims, it belonged in state court. *Id.* After the case was remanded to state court, Plaintiff filed an amended complaint which raised—for the first time—a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and added new claims against up to 1,000 unnamed Defendant Corporations ("the Doe Defendants"), to which Georgeson allegedly provided similar services during unidentified merger transactions ("the Doe transactions"). Defendants again removed the case, this time claiming federal question jurisdiction based on the RICO claim, and alternatively, diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1452(b). (*Gavin v. AT&T*, No. 07cv3078 (N.D. Ill. filed June 1, 2007) (*Gavin II*).

There are several motions pending before the Court: AT&T's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (R. 20); Georgeson's motion to dismiss under Rule 12(b)(6) (R. 22); motions by both Defendants asking the Court to take judicial notice of various documents submitted in support of their motions (R. 24, 28); Plaintiff's motion for class certification (R. 38); and Plaintiff's motion to take judicial notice of the oral argument before the Seventh Circuit in *Gavin I.* (R. 50.) For the following reasons, AT&T's motion to dismiss is granted in part and denied in part; Georgeson's motion to dismiss is granted in part and denied in part; Plaintiff's motion for class certification is denied without prejudice; and all three motions to take judicial notice are granted.

2

## RELEVANT FACTS[1]

In 1998, U.S. West Media Group split off from its parent corporation U.S. West, a so-called "Baby Bell" that came into existence after the 1984 "Big Bang" breakup of AT&T. (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 6, 15.) After the split, certificates for U.S. West common stock were exchangeable for MediaOne Group, Inc. ("MediaOne") shares on a one-for-one basis. (*Id.* 15.) In June 2000, MediaOne merged with AT&T (the "AT&T/MediaOne merger"). (*Id.* ¶ 16.) The terms of the merger entitled MediaOne shareholders to obtain in exchange for each of their shares .95 shares of AT&T stock plus $36.27 and any accrued dividends. (*Id.*) At the time of the AT&T/MediaOne merger, Plaintiff, a resident of Illinois, held certificates for 235 U.S. West Media Group unexchanged shares. (*Id.* ¶ 6.)

On June 15, 2000, AT&T sent a notice to all MediaOne shareholders who had yet to exchange their shares, advising them that they were entitled to exchange their shares at no charge through AT&T's exchange agent, EquiServe Trust Co. ("EquiServe"). *Gavin*, 464 F.3d at 637. On August 1, 2000, AT&T sent a follow-up notice to those shareholders who had not responded to the first notice, again advising them of the exchange option available through EquiServe. *Id.* In December 2000, AT&T retained Georgeson to perform "post-merger cleanup" of the outstanding MediaOne certificates. (R. 1, Not. of Removal, Ex. 5, FAC ¶ 17.) Georgeson provides post-merger cleanup services, whereby companies like AT&T with outstanding certificates of pre-merger stock shares can "clean" those shares off their books. (*Id.* ¶ 8.) In

---

[1] These facts are taken from the FAC. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007).

essence, Georgeson's job is to find holders of pre-merger certificates, contact them by mail, and induce them to turn in their certificates for new stock certificates in the post-merger issuing company. (*Id.* ¶ 10.)

On December 15, 2000, Georgeson mailed notices on AT&T's letterhead ("the December 2000 Notice") to Plaintiff and other certificate holders who still held U.S. West or MediaOne certificates. (*Id.* ¶ 17.) The Notice stated in part:

> In 1998, Media Group was split off from U.S. West, Inc. and exchanged into MediaOne on a one-for-one basis. Subsequently, in June 2000, AT&T Corp. acquired MediaOne. As a result, your shares are no longer traded. You now need to send your 'old' Media Group certificate(s) for the AT&T shares due you, plus cash payment and back dividends. If you do not claim your AT&T stock and cash, eventually they will be turned over to the state authorities under the abandoned property laws.

(*Id.* ¶ 19, Ex. A.) The Notice also informed certificate-holders that they could exchange their certificates through Georgeson, and that Georgeson would charge a $7 per-share fee for exchanging the certificates:

> We have retained Georgeson Shareholder Communications Inc. to assist you in claiming your shares and cash. We urge you to claim your shares now. You may choose to have the AT&T shares due you sold on the open market or have them sent to you. To defray the cost of providing you with this service, a processing fee of $7 per AT&T share due you will be deducted from the additional cash payment of $36.27 per US West Media Group share you are due, and paid to Georgeson Shareholder Securities Corporation, member of [the National Association of Securities Dealers] and [Securities Investor Protection Corporation].

(*Id.* ¶ 22, Ex. A.) Plaintiff and other certificate-holders thereafter exchanged their certificates through Georgeson, incurring the $7 per-share fee, which in Plaintiff's case amounted to $1,645. (*Id.* ¶ 3, 6, 24, 27.)

4

### 1.    Proceedings in *Gavin I*[2]

On February 9, 2001, Plaintiff filed suit against AT&T and Georgeson in the Circuit Court of Cook County, raising consumer fraud claims under Illinois law. (*Gavin I*, R. 1, Not. of Removal, Ex. A, Compl.)  Plaintiff alleged that the December 2000 Notice was false and misleading because certificate-holders were not informed that they could avoid the $7 per-share fee by exchanging their certificates through AT&T's regular transfer agent, EquiServe. (*Id.* ¶¶ 1-24.)  Defendants removed the case to federal court, claiming that federal jurisdiction existed under SLUSA.[3] (*Id.*, Not. of Removal.)  Judge Nordberg denied Plaintiff's motion to remand the case to state court. (*Id.*, R. 12, Minute Ord.)  Plaintiff twice sought interlocutory review of Judge Nordberg's order concluding that removal was proper under SLUSA, but the Seventh Circuit denied these requests. (*Id.*, R. 26, 7th Cir. Ord. 5/29/02; R. 29, 7th Cir. Ord. 7/15/02; R. 35, 7th

---

[2] Because the Court is permitted to consider matters that are in the public record in deciding a motion to dismiss, *see Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000), the Court grants Defendants' unopposed motions (R. 24, 28) to take judicial notice of the proceedings in *Gavin I*; the proceedings in *Starr v. Georgeson Shareholder, Inc.*, 412 F.3d 103 (2d Cir. 2005); and proxy statements that were filed with the Securities and Exchange Commission. The Court also takes notice of a page missing from Exhibit B attached to the FAC that has been supplied by AT&T. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (court may consider documents attached to motion to dismiss if referenced in complaint and central to plaintiff's claims). Plaintiff's unopposed motion (R. 50) to take judicial notice of the oral argument before the Seventh Circuit in *Gavin I* is also granted.

[3] Under SLUSA, federal courts have exclusive jurisdiction over certain statutorily-defined class actions alleging fraud "in connection with the sale or purchase" of a covered security. *See* 15 U.S.C. §§ 77p, 78bb(f); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

Cir. Ord. 1/21/03.)

In April 2003, Plaintiff filed a First Amended Complaint raising both Illinois consumer fraud claims and claims under Section 10(b) of the Securities and Exchange Act. (*Id.*, R. 41, Am. Compl. ¶¶ 27-68.) The case was thereafter transferred to Judge Grady, who granted the Defendants' motion to dismiss Plaintiff's state law consumer fraud claims, finding that they were preempted, but denied the Defendants' motion to dismiss as to Plaintiff's federal securities claims. (*Id.*, R. 72, Mem. Opinion & Order.) In December 2003, Plaintiff filed a Second Amended Complaint, which included state law breach of fiduciary duty and constructive fraud claims under New York law, as well as the federal securities claims. (*Id.*, R. 73, Second Am. Compl.)

In June 2005, Judge Grady granted summary judgment for AT&T and partial summary judgment for Georgeson, finding that the December 2000 Notice was not actionable under Section 10(b) because AT&T had twice disclosed the free-exchange alternative and, thus, the omission of this option from the December 2000 Notice was not material. (*Id.*, R. 115, Mem. Opinion & Ord.) Judge Grady also dismissed Plaintiff's New York state law claims, finding that previous orders had already concluded that all state law claims alleging fraud in connection with the December 2000 Notice were preempted by SLUSA. (*Id.* at 39-42.) The only claim that remained was Plaintiff's claim under Section 10(b) alleging that Georgeson's telephone agents failed to advise shareholders who contacted them that a fee-free exchange option was available through EquiServe. (*Id.* at 30-42.) Plaintiff, however, was not one of the class members who had contacted Georgeson by telephone, so following Judge Grady's ruling Plaintiff's counsel

6

filed a motion for leave to contact class members to find another named plaintiff.[4] (*Id.*, R. 116, Pl.'s Mot. for Leave to Contact Class Members.) Judge Grady denied Plaintiff's request, ruling that there was no viable class pertaining to the telephone-call claim due to lack of numerosity. (*Id.*, R. 124, Mem. Opinion & Order.) Because judgment had already been entered on the claims raised by Plaintiff, Judge Grady entered final judgment in favor of Defendants. (*Id.*) Plaintiff appealed. (*Id.*, R. 126, Not. of Appeal.)

On appeal, the Seventh Circuit concluded that the case had been improperly removed under SLUSA. *Gavin*, 464 F.3d at 638. Instead, the Seventh Circuit concluded, the case raised "garden-variety issues of state-law consumer fraud. . . . It would be the same kind of case had the letter invited the recipient to pay $7 for Linux software that he could download for free from the Internet." *Id.* at 640. Accordingly, the Seventh Circuit found no basis for the case to be in federal court.[5] The Court therefore reversed the judgment, with instructions that all prior rulings be vacated and the case remanded to state court. *Id.* at 641. The Court expressly disavowed any opinion about the merits of Plaintiff's state-law fraud claims. *Id.* at 638.

## 2. Proceedings in *Gavin II*

On May 3, 2007, after the case was remanded to state court, Plaintiff filed an amended complaint styled, "First Amended Complaint," although this was in fact her fourth complaint in

---

[4] Judge Grady previously deferred ruling on Plaintiff's class certification motion pending the outcome of the summary judgment motion. (*Gavin I*, R. 94, Minute Order.)

[5] The Seventh Circuit noted that it appeared that diversity jurisdiction existed; however, the Court declined to exercise jurisdiction on this ground because Defendants never sought to remove on this basis. *See Gavin*, 464 F.3d at 640-41; *see also* 28 U.S.C. § 1446(b) (case cannot be removed on the basis of diversity jurisdiction if more than one year has passed since commencement of action).

7

the case. (R. 1, Not. of Removal, Ex. 5, FAC.) In the First Amended Complaint ("FAC"),
Plaintiff again alleges that the December 2000 Notice was false and misleading because it did not
advise certificate-holders of the fee-free option for exchanging their shares. (R. 1, Not. of
Removal, Ex. 5, FAC ¶¶ 15-29.) Plaintiff further alleges that when shareholders called
Georgeson's call center with questions about the fee, "they were almost never told that the
service was available for free." (*Id.* ¶ 29.) Plaintiff also adds expansive new allegations
regarding post-merger cleanup services Georgeson allegedly provided to the Doe Defendants in
the context of up to 1,000 other unidentified post-merger transactions. She alleges generally that
Georgeson engaged in the same deceptive practices with respect to each of these transactions.
(*Id.* ¶¶ 1, 3, 8-14, 43, 50, 57.) According to the FAC, Georgeson processed approximately
44,000 U.S. West certificates and an unknown amount of certificates in the Doe transactions,
thus "fraudulently" obtaining more than $30 million from shareholders. (*Id.* ¶ 24.)

Plaintiff raises the following claims: AT&T and the Doe Defendants breached their
fiduciary duties to shareholders (Count I); Georgeson aided and abetted AT&T and the Doe
Defendants in the breach of their fiduciary duties (Count II); Georgeson violated RICO by
engaging in a scheme to defraud in connection with its post-merger cleanup services provided to
AT&T and the Doe Defendants (Count III); all Defendants violated New York's consumer
protection statute (Count IV); all Defendants violated the Illinois Consumer Fraud and Deceptive
Business Practices Act, 815 ILCS 505/1 *et seq.* (Count V); and all Defendants committed

common law fraud under Illinois law (Count VI).[6]  (*Id.*)

On June 1, 2007, Defendants again removed the case, this time based on the presence of the federal RICO claim, and, alternatively, based on diversity jurisdiction under CAFA.[7]  (R. 1, Not. of Removal.) The case was thereafter assigned to this Court.[8]  (R. 31, Exec. Comm. Order.)

## LEGAL STANDARDS

When deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). Detailed factual allegations are not necessary, but merely reciting the elements of a cause of action is not sufficient. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief

---

[6] This claim is mislabeled as Count V in the FAC, but the Court refers to it herein as Count VI. The Court notes additionally that it is not entirely clear whether Plaintiff is attempting to assert Counts IV, V and VI against the Doe Defendants or only against AT&T and Georgeson. Nevertheless, within each of these claims Plaintiff reasserts the factual allegations pertaining to the Doe Defendants, and the Court therefore presumes that she intended to assert these claims against them as well.

[7] Although this case was originally filed prior to CAFA's effective date of February 18, 2005, Plaintiff's addition of new claims and new defendants following the effective date of CAFA provided a basis for Defendants to remove under the statute. *See Knudsen v. Liberty Mutual Ins. Co.*, 435 F.3d 755, 757-58 (7th Cir. 2006).

[8] Judge Grady denied Defendants' motion to have the case assigned to him as related to *Gavin I*, stating: "The case that was before me the last time was brought under one federal statute that the Court of Appeals said didn't apply, and now we have RICO, a wholly different approach, wholly different issues and different parties, some of whom aren't even in yet. It's a different case." (R. 25, Georgeson's Mem., Ex. 10, Tr. of Proceedings, June 6, 2007, before the Hon. John F. Grady).

9

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see also Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (observing that the Supreme Court in *Bell Atlantic* "retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

Although fact pleading is not required in federal court, to survive a motion to dismiss a plaintiff must plead enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974. "The pleading must contain something more [than] a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1964-65. In other words, "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Serv., Inc.,* 496 F.3d 773, 777 (7th Cir. 2007).

## ANALYSIS

Defendants argue that the FAC should be dismissed for a variety of reasons.[9] First, Defendants argue that the allegations pertaining to the Doe transactions and unidentified telephone calls to Georgeson's customer service center, and any Counts of the FAC premised on these allegations, should be dismissed because: Plaintiff lacks standing to assert any claims based on non-AT&T transactions or telephone calls that she did not make; Plaintiff's allegations regarding the Doe transactions and unidentified telephone calls do not comport with Federal Rule of Civil Procedure 8 and 9(b); and these claims are time-barred. (R. 22, Georgeson's Mot. to

---

[9] In addition to asserting its own arguments, AT&T adopts and joins all of the arguments raised by Georgeson. (R. 21, AT&T's Mem. at 2.) Likewise, Georgeson adopts the arguments raised by AT&T in its Reply. (R. 52-2, Georgeson's Reply at 23.)

Dismiss at ¶ 6; R. 20, AT&T's Mot. to Dismiss ¶ 3.)

Second, Defendants argue that the breach of fiduciary duty claims (Counts I and II) fail as a matter of law because AT&T does not owe a fiduciary duty to its shareholders under New York law. (R. 22, Georgeson's Mot. to Dismiss ¶ 7; R. 20, AT&T's Mot. to Dismiss ¶ 4.) AT&T additionally argues that Plaintiff's breach of fiduciary claim is preempted by New York's Martin Act, N.Y. Gen. Bus. Law § 352, and, alternatively, that Plaintiff's allegations fail to state a claim for relief. (R. 20, AT&T's Mot. to Dismiss ¶ 4.)

Third, Defendants argue that Plaintiff's RICO claim (Count III) must be dismissed because: Plaintiff does not have standing to seek damages based on non-AT&T transactions; the claim is time-barred to the extent it rests on the Doe transactions; and Plaintiff does not and cannot plead a RICO enterprise, a scheme to defraud, or a pattern of racketeering. (R. 22, Georgeson's Mot. to Dismiss ¶ 8.)

Fourth, Defendants argue that Plaintiff's New York consumer fraud claim (Count IV) fails as a matter of law because Plaintiff is not a New York resident and was not deceived in New York. (*Id.* ¶ 9; R. 20, AT&T's Mot. to Dismiss ¶ 5.)

Finally, Defendants argue that Plaintiff's Illinois consumer fraud and common law fraud claims (Count V and VI) fail as a matter of law because she cannot show that any of the statements in the December 2000 letter were false or misleading. (R. 22, Georgeson's Mot. to Dismiss ¶ 10; R. 20, AT&T's Mot. to Dismiss ¶ 6.) AT&T further argues that Plaintiff has failed to allege that it acted with the requisite scienter. (R. 20, AT&T's Mot. to Dismiss ¶ 6.)

## A.    The Doe Transactions And Unidentified Telephone Call Allegations

Defendants argue that the allegations pertaining to the Doe transactions and the telephone

11

calls to Georgeson's customer service center, and the Counts premised on these allegations, must be dismissed on various grounds. (R. 22, Georgeson's Mot. to Dismiss at ¶ 6; R. 20, AT&T's Mot. to Dismiss at 3.) The Court addresses each argument in turn.

## 1. Standing[10]

Defendants first argue that Plaintiff lacks Article III standing to assert any claims based on the non-AT&T transactions or on telephone calls that she did not make because she did not suffer any injury relative to these allegations.[11] (*Id.*) Article III limits the jurisdiction of the federal courts to hear only actual cases and controversies. U.S. Const., Art. III; *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976). The concept of standing is part of this limitation. *Simon*, 426 U.S. at 37. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Americans United*, 454 U.S. 464, 472 (1982); *see also Indiana Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007) ("To have standing, a plaintiff must have a cognizable injury that is causally connected to the alleged conduct and is capable of

---

[10] Because standing pertains to the Court's subject matter jurisdiction, this issue should have been raised in a Rule 12(b)(1) motion; however, the standard governing a Rule 12(b)(1) motion is the same. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (in deciding motion to dismiss under Rule 12(b)(1), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff).

[11] Defendants do not dispute that Plaintiff has standing to assert claims based on her alleged injury in connection with the AT&T/MediaOne post-merger cleanup. (R. 52-2, Georgeson's Reply at 5.)

being redressed.").

The standing inquiry remains the same even if the case is proceeding as a class action: "That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Simon*, 426 U.S. at 40 n.20; *see also Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). To have standing to sue as a class representative, the plaintiff must be part of that class, "that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) (*citing Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974).) Further, a plaintiff must demonstrate standing for each claim he seeks to press. *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1867 (2006); *Morlan v. Universal Guaranty Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 1998).

Here, Plaintiff has adequately alleged that she suffered an injury as a result of Defendants' alleged unlawful conduct, specifically, that she was induced to exchange her certificates through Georgeson and incurred substantial and unnecessary fees as a result. Her injury is fairly traceable to Defendants' alleged illegal conduct, and the relief that she seeks—an award of damages—would likely redress her injury. Although some of the facts surrounding the class members' injuries may vary, including that some class members contacted Georgeson by telephone to inquire about the fee while others did not, Plaintiff and the other class members

13

whom she purports to represent all suffered the same alleged injury: incurring fees for a service provided by Georgeson that was available to them for free.[12] *See Keele*, 149 F.3d at 593 (named plaintiff had standing to represent broad class of persons who received letters from defendants over a period of years, even though she did not pay collection fee and other class members did). The Court concludes that Plaintiff has established a sufficient stake in the outcome of this litigation to satisfy Article III requirements.

## 2. Federal Rules of Civil Procedure 8 and 9(b)

Defendants next argue that Plaintiff's allegations regarding the Doe transactions and the unidentified telephone calls to Georgeson's call center do not comport with Federal Rules of Civil Procedure 8 and 9(b). (R. 22, Georgeson's Mot. to Dismiss ¶ 6(b); R. 20, AT&T's Mot. to Dismiss ¶ 3.) Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. When the complaint alleges fraud, the standard is higher: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In essence, Rule 9(b) requires the plaintiff to plead the "who, what, when, where, and how" of the alleged fraudulent conduct. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). This heightened pleading requirement is a response to the "great harm to the reputation of a business

---

[12] Indeed, where the details of the named plaintiff's injury varies from that of putative class members, the issue may not be one of Article III standing at all but one of adequacy under Rule 23. *See Gratz v. Bollinger*, 539 U.S. 244, 263 n. 15 (2003) (noting tension in the case law as to whether variations in the injuries of named plaintiff and class members should be addressed under rubric of standing or Rule 23 adequacy); *see also Payton*, 308 F.3d at 677 (pointing out the "problem inherent in conflating the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative"). Plaintiff's adequacy as a class representative is a separate issue that must be addressed before a class can be certified in this matter.

firm or other enterprise a fraud claim can do." *Id.* (internal citation omitted). Thus, "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.* Whether Rule 9(b) applies depends upon the nature of plaintiff's factual allegations: a claim that is premised upon a course of fraudulent conduct implicates Rule 9(b)'s heightened pleading requirements, regardless of whether the claim is by definition a fraud claim. *Id.*

There can be little doubt that Plaintiff's claims all sound in fraud, as the FAC is peppered with references to fraudulent and deceptive conduct by Georgeson, AT&T, and the Doe Defendants. (*See* R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 1, 6, 14, 19, 21, 24, 25, 27, 29.) Despite the differences in Plaintiff's legal theories, the factual basis for each of Plaintiff's claims is the same: that Georgeson, AT&T, and the Doe Defendants fraudulently induced Plaintiff and others like her to exchange their shares through Georgeson, thus incurring unnecessary and unreasonable fees. Because Plaintiff's claims sound in fraud, her factual allegations must comport with Rule 9(b).

Plaintiff has provided significant detail about the "who, what, when, where, and how" of the fraud involving the AT&T/MediaOne post-merger cleanup, but she provides almost no detail about the alleged fraud in connection with the Doe transactions. Instead, she alleges generally that Georgeson's business is to provide post-merger cleanup services for corporate entities and that Georgeson has carried out over 850 post-merger cleanup programs. (R. 5, Not. of Removal, Ex. 5, FAC ¶¶ 8-12.) She further alleges that Georgeson sends communications to shareholders on the Doe Defendants' letterhead, failing to disclose that "Plaintiff and class members are entitled to exchange their certificates at no cost directly with the issuing company or its transfer

15

agent." (*Id.* ¶ 13.)

Although Plaintiff has arguably alleged the "how" of the fraud, her vague assertions that Georgeson sent shareholders misleading notices in connection with up to 1,000 unidentified post-merger cleanup transactions do not put the Defendants on notice of the "who, what, where, and when" of the fraud she is alleging. *See Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995) (plaintiff failed to adequately plead fraud where she described with particularity the fraud directed against her, but with regard to other customers alleged merely that defendant did the same thing to them without providing names, dates, or other details); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992) (allegations of fraud insufficient where they stated general subject matter of misrepresentation, but did not allege identity of parties to the misrepresentation, or the time and place misrepresentation was made).

There are particular difficulties with Plaintiff's RICO claim involving the Doe transactions. A RICO plaintiff "must, at a minimum, describe the predicate acts of fraud with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren v. New Vision Intern, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme. *Id.* at 726. Further, the plaintiff must plead the requisite pattern of fraud with particularity. *Id.* at 729. ("[W]e have repeatedly held that a plaintiff's conclusory allegations that 'defendants' also defrauded unidentified 'others' are not enough to plead the requisite pattern of fraud."). The vague allegations Plaintiff has made about the Doe transactions fail to satisfy any of these requirements and thus are insufficient under Rule 9(b).

16

Similarly, Plaintiff has not alleged the "who, what, where, and when" of the telephone calls allegedly made to Georgeson's call center; instead, she asserts generally: "When persons called to inquire about the PostMerger Cleanup service, they were almost never told that the service was available for free." (R. 1, Not. of Removal, Ex. 5, FAC ¶ 29.) These vague allegations do not satisfy Rule 9(b). *Uni\*Quality*, 974 F.2d at 923-24; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do.").

Plaintiff appears to concede that her allegations do not satisfy Rule 9(b), instead arguing that she should be excused from Rule 9(b)'s particularity requirement because the facts she needs to detail her claims are "exclusively in the hands of Georgeson." (R. 48, Pl.'s Combined Resp. at 21.) Although Plaintiff is correct that Rule 9(b)'s pleading requirements may be relaxed where the relevant information is in the exclusive knowledge of the defendant, *see Jepson*, 34 F.3d at 1328, the Court is not persuaded that Plaintiff should be given the benefit of this rule here.

As an initial matter, Plaintiff did not include any allegations in her FAC that she was not able to adequately plead the circumstances of the fraud because the relevant information is in Defendants' exclusive possession. In *Goren,* the Seventh Circuit declined to relax Rule 9(b)'s pleading requirements in part because the complaint was devoid of such allegations. *Goren*, 156 F.3d at 729 n.6; *compare Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) (relaxing Rule 9(b) pleading requirements where plaintiff alleged in amended complaint that the information needed to satisfy Rule 9(b) was in the hands of the defendant and that defendant had resisted plaintiff's efforts to discover the information).

Moreover, the information lacking from the FAC is not the sort that would be in the

17

exclusive knowledge of the Defendants. Plaintiff purports to represent a class of thousands who received fraudulent communications directly from Georgeson; presumably these purported class members would know the date, place, and contents of any mailings they received. *See Jepson*, 34 F.3d at 1328 (plaintiffs had "as much access as the defendants to the customers who can flesh out the circumstances of the mailings and wire communications involved"). In an analogous case involving an expansive claim that defendants had defrauded thousands of individuals, the Seventh Circuit refused to excuse the plaintiff's failure to provide the level of detail required by Rule 9(b) regarding the other victims of the defendants' alleged fraud. *See Goren*, 156 F.3d at 729 n.6. The Court commented, "[W]e find it difficult to believe that plaintiff's counsel, a law firm experienced in the filing of RICO class actions, could not have found additional 'victims' prior to the filing of the amended complaint." *Id.* That comment is equally apt here. This Court finds it difficult to believe that Plaintiff's counsel, a law firm which in its own estimation has "vast experience in representing consumers and investors in class actions," could not have found additional recipients of Georgeson's letters prior to filing the FAC, particularly given that this litigation has been pending for more than six years. (*See* R. 1, Not. of Removal, Ex. 5, FAC ¶ 35.) The same analysis applies to the telephone calls, which were purportedly made by class members. The record in *Gavin I* further undercuts Plaintiff's suggestion that the information about the telephone calls is in the exclusive possession of the Defendants. (*See Gavin I*, R. 115, Mem. Opinion & Ord. at 7-8.) Discovery in the earlier proceeding revealed at least some details of the communications between Georgeson's employees and shareholders who called to inquire or complain about the fee. (*See id.* at 7-9; *see also id.*, R. 116, Pl.'s Mot. for Leave to Contact Class Members at 1 (indicating that Defendants had previously provided a list of class members

in discovery). For unknown reasons, Plaintiff elected not to include this information in her FAC, instead asserting only vague allegations about the telephone calls, which is insufficient under Rule 9(b).

In considering whether to relax the requirements of Rule 9(b), the Court bears in mind the words of the Seventh Circuit: "Rule 9(b) ensures that a plaintiff [has] some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." *Uni\*Quality*, 974 F.2d at 924. Under the circumstances of this case, the Court does not find it appropriate to relax the Rule 9(b) pleading requirements to allow Plaintiff to proceed with her expansive, undefined fraud claims involving the Doe transactions and the unidentified telephone calls.[13] Accordingly, the allegations pertaining to the Doe transactions and the unidentified telephone calls are dismissed, and Counts I-VI of the FAC are dismissed to the extent they rest on these factual allegations.

### 3. Leave to Replead

The Court then must consider whether Plaintiff should be granted leave to amend her FAC to reallege the allegations pertaining to the Doe transactions and telephone calls in more detail. Whether to grant leave to amend is a decision committed to the Court's discretion. *King v. East St. Louis Sch. Dist.*, 496 F.3d 812, 819 (7th Cir. 2007). Although there is a liberal policy

---

[13] We are not persuaded by Plaintiff's citation to this Court's decision in *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202 (N.D. Ill. 1995), since in that case the allegations of fraud were far less vague and involved a specified number of nursing home residents over a specified time period. Moreover, the Court's ruling was governed by the more liberal pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), which has since been "retired" by the Supreme Court. *See Bell Atlantic*, 127 S. Ct. at 1968.

in favor of permitting amendment, *see* Federal Rule of Civil Procedure 15(a), this policy is not without limits. Leave to amend need not be granted where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F.3d 663, 666 (7th Cir. 2007).

Here, Plaintiff has not asked for leave to amend her FAC. (*See* R. 48, Pl.'s Combined Resp.) For this reason alone, the Court would be justified in dismissing Plaintiff's claims with prejudice. *See James Cape & Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 400-01 (7th Cir. 2006) (where plaintiff did not request leave to amend and pleadings were deficient, district court did not abuse discretion in dismissing claims with prejudice). Nevertheless, because Rule 15 requires the Court to consider whether "justice" requires permitting an amendment, we will consider in more detail whether the circumstances weigh in favor of giving Plaintiff an opportunity to amend her FAC. We conclude that they do not.

First, there was significant delay by Plaintiff in raising the allegations about the Doe transactions. During the nearly five years the case was pending prior to the Seventh Circuit's remand, Plaintiff's complaint went through three different iterations; in none of these pleadings did Plaintiff raise a claim against the Doe Defendants or involving the Doe transactions. (*See Gavin I,* R. 1, Not. of Removal, Ex. A, Compl.; *Id.,* R. 41, Am. Compl.; *Id.,* R. 73, Second Am. Compl.) The Court rejects Plaintiff's assertion that she did attempt to raise claims involving the Doe transactions in her earlier pleadings. (R. 48, Pl.'s Combined Resp. at 14.) Although Plaintiff sought certification of an expansive class involving mergers other than the

20

AT&T/MediaOne merger, Judge Grady aptly concluded that there were no allegations in the complaint to support her request, and instead the proposed class appeared to have been "pulled from thin air." (*Gavin I*, R. 124, Mem. Opinion & Ord. at 4.) Further, although Plaintiff included certain background information about Georgeson's post-merger cleanup business in her prior complaints, in each pleading she clearly defined the "nature of the case" as involving the AT&T/MediaOne merger.[14] (*Id.*, R. 41, First Am. Compl. ¶¶ 1, 24; R. 73, Second Am. Compl. ¶¶ 1, 25.)

Plaintiff's recent addition of the RICO claim involving the Doe transactions is particularly perplexing, given that Plaintiff argued fervently in the Seventh Circuit that this case is a "garden variety" state law consumer fraud case that belonged in state court. (R. 50-2, Tr. of Oral Argument at 3-10.) After succeeding in getting the case remanded, Plaintiff immediately sought to raise an expansive new federal claim under RICO and other claims against the Doe Defendants. Plaintiff's only explanation for deciding to bring the RICO claim at this late stage is as follows: "This RICO claim came about while Plaintiff's counsel drafted the FAC. While rephrasing the complaint to describe how the issuers allowed Georgeson to conduct the business of the numerous separate issuers toward their own shareholders in the breach of fiduciary duty claim, the applicability of the RICO claim became apparent." (R. 48, Pl.'s Combined Resp. at 17 n. 4.) This explanation is unpersuasive. Plaintiff's undue delay in raising these allegations

---

[14] The Court also finds instructive the view of our colleague Judge Grady, who presided over this case for nearly three years. In Judge Grady's opinion, the FAC raises "wholly different issues" and involved "different parties" than Plaintiff's earlier complaints. (*See* R. 25, Georgeson's Mem., Ex. 10, Tr. of Proceedings before the Hon. John F. Grady.)

21

weighs against granting her leave to replead the allegations at this stage of the litigation.[15] *See Airborne Beepers*, 499 F.3d at 667.

The Court also may deny leave to amend when amendment would be futile. *King*, 496 F.3d at 819. An amendment is considered futile if an amended complaint would not survive a motion for summary judgment. *Id.* Here, Plaintiff's response to the motions to dismiss indicates that she does not possess any additional information relative to the Doe transactions to satisfy Rule 9(b). (*See* R. 48. Pl.'s Combined Resp. at 19-21.) Instead, she appears to be hoping that discovery will turn up the information she is missing. (*See id.*; *see also* R. 38, Pl.'s Mot. to Certify Class (seeking leave to file a memorandum of law in support of motion for class certification after being given an opportunity to conduct discovery regarding "(1) which of Georgeson PostMerger Cleanup service's 850 transactions involved an uncapped per-share fee to certificate holders, and (2) the forms of contracts Georgeson used in connection with its PostMerger Cleanup service so that Plaintiff can determine the extent to which the terms or communications of the transactions differed.").) Given the length and complexity of the proceedings that have already occurred in this case, the Court does not find it appropriate to permit Plaintiff at this stage to engage in a vast fishing expedition in hopes she can turn up a basis for her fraud accusations regarding the Doe transactions.

Although it appears Plaintiff may possess some additional information about the alleged telephone calls to Georgeson's call center, Plaintiff has not argued (nor is it clear) that she has

---

[15] The Court notes additionally that when given an opportunity to file an amended pleading in the past, Plaintiff has attempted to reassert claims that the Court already dismissed, creating unnecessary work for both Defendants and the Court. (*See Gavin I*, R. 72, Mem. Opinion & Ord.; *Id.*, R. 115, Mem. Opinion & Ord. at 39-42.)

enough information to satisfy Rule 9(b). Plaintiff has not asked for leave to amend or indicated what details she would include in an amended pleading, instead arguing that she should be excused from Rule 9(b)'s pleading requirements. "District judges are not mind readers," and without some explanation from Plaintiff of what an amended pleading would contain relative to the telephone call allegations, the Court declines to give Plaintiff an opportunity to amend, particularly given that this is Plaintiff's fourth attempt to state her claims. *See James Cape*, 453 F.3d at 401 (district court did not abuse its discretion in dismissing claims with prejudice, since it had no way of knowing what the proposed amendment would entail).

Defendants also argue that Plaintiff's new claims involving the Doe transactions are time-barred, which, if true, would provide another reason why amendment would be futile. (*See* R. 25, Georgeson's Mem. at 11-12.) As Defendants point out, Plaintiff should have been on notice of these claims no later than February 9, 2001, when she filed her initial complaint involving Georgeson's post-merger cleanup services. (*See id.*) The statute of limitations has since expired for each of her claims raised against the Doe Defendants.[16] Plaintiff nevertheless argues that the new claims in her FAC "relate back" to her timely filed complaints under Federal Rule of Civil Procedure 15(c). (R. 48, Pl.'s Combined Resp. at 11-12.) Rule 15(c) provides, in pertinent part:

---

[16] The limitations period for civil RICO is four years. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.,* 483 U.S. 143, 149 (1987). The limitations period for common law fraud is five years. 735 ILCS 5/13-205. The limitations period for the New York and Illinois statutory consumer fraud claims is three years. N.Y. C.P.L.R. § 214; 815 ILCS 505/10a(e). The limitations period for the New York breach of fiduciary claims is three years, since Plaintiff is seeking money damages in connection with this claim. N.Y. C.P.L.R. § 214; *Weiss v. TD Waterhouse,* 847 N.Y.S.2d 94 (N.Y. App. Div. 2007). Even if Plaintiff is correct that choice-of-law principles require application of Illinois' statute of limitations to the New York claims, these claims would still be untimely under Illinois' five-year statute of limitations for tort claims. (*See* R. 56, Pl.'s Surreply at 5 n.3.)

23

> An amendment to a pleading relates back to the date of the original
> pleading when . . . the amendment asserts a claim or defense that
> arose out of the conduct, transaction or occurrence set out—or
> attempted to be set out—in the original pleading.

Fed. R. Civ. P. 15(c)(1)(B). An amendment that adds or substitutes a new party will relate back

only if the above requirement is met and, additionally, if the party to be brought in by

amendment:

> received such notice of the action that it will not be prejudiced in
> defending on the merits; and . . . knew or should have known that the
> action would have been brought against it, but for a mistake
> concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Plaintiff argues that "from the very beginning of this case, the Gavin plaintiff has sought

to represent the so-labeled 'Mega' class of all certificate holders who were charged uncapped

per-share fees for this ministerial certificate processing." (R. 48, Pl.'s Combined Resp. at 14.) In

Plaintiff's view, the claims involving the Doe Defendants arise from the same fraud allegations

that were contained in the earlier pleadings. (*Id.* at 15.) Plaintiff further argues that the Doe

Defendants "share an identity of interest with Georgeson" based on alleged indemnification

agreements between them, such that the Doe Defendants should have been on notice of

Plaintiff's claims all along. (R. 48, Pl.'s Combined Resp. at 12-13.)

The Court is not convinced that Plaintiff has sought to raise the Doe allegations "from the

very beginning" of this case. As stated above, this Court's careful reading of the pleadings in

*Gavin I* indicates that up until the filing of the FAC, Plaintiff's claims were limited to the

AT&T/MediaOne post-merger cleanup. Nor is the Court persuaded that Plaintiff's allegations

involving 1,000 additional post-merger cleanup transactions arise out of the same "conduct,

24

transaction or occurrence" as the AT&T/MediaOne merger. *See* Fed. R. Civ. P. 15(c)(1). Instead, Plaintiff is seeking to raise entirely new claims based on new facts. *See Phelan v. City of Chicago*, 125 F. Supp. 2d 870, 877 (N.D. Ill. 2000) (no relation back where incidents occurred at different times, involved different city departments and different jobs); *Henderson v. Village of Dixmoor*, 99 F. Supp. 2d 940, 945 (N.D. Ill. 2000) ("[P]laintiffs cannot now argue that their original complaint sought relief which was not alleged simply to avoid a statute of limitations."); *FDIC v. Braemoor Assoc.*, No. 76 C 3294, 1985 WL 1919, at *4 (N.D. Ill. June 28, 1995) ("An amended pleading will not relate back, however, where it alleges a completely new cause of action based on facts that go beyond the original timely complaint.").

This is also not a case involving mistaken identity of the proper defendant. Plaintiff is still suing Georgeson and AT&T, but wants to add up to 1,000 additional defendants who were not named in her earlier pleadings. "It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires." *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a "mistake" as to the defendant's "identity" for purposes of Rule 15(c)(3). *Id.*; *see also Jacobson v. Nat'l R.R. Passenger Corp.*, No. 97-6012, 1999 WL 1101299, at *8 (N.D. Ill. Nov. 29, 1999) (no relation back where plaintiff was not mistaken about identity of proper defendant, but instead was trying to allege new cause of action against new defendant); *Household Comm. Fin. Servs., Inc. v. Trump*, 863 F. Supp. 735, 742-43 (N.D. Ill. 1994) (plaintiff cannot amend a complaint under Rule 15(c) to include "an additional defendant it was unaware it had a cause of action against at the time of the original filing").

The Court is also not persuaded by Plaintiff's argument that relation back is proper

because Georgeson and the Doe Defendants share an identity of interest based on alleged indemnification agreements between them. In support of this argument, Plaintiff has submitted what purports to be an indemnification agreement between Georgeson and AT&T; she asserts—based on "information and belief"—that similar agreements exist between Georgeson and all of the Doe Defendants. (R. 48, Pl.'s Combined Resp. at 13, Ex. 1.) Plaintiff has not provided the Court with any basis to consider this exhibit, which is outside the pleadings, in deciding the motions to dismiss.[17] *See* Fed. R. Civ. P. 12(d).

Moreover, even if the Court considered the alleged indemnification agreements, the Court disagrees that by virtue of these agreements "the Doe Defendants were put on notice of the claims against them by the original complaint." (R. 48, Pl.'s Combined Resp. at 13.) The one case cited by Plaintiff in support of her argument does not pertain to relation back under Rule 15 but only to general indemnification principles. (*See id.* at 12 (citing *U.S. ex rel. James Cape & Sons Co. v. Am. Home Assur. Co.*, No. 02-1903, 2004 WL 3119029, at *6 (N.D. Ill. Dec. 3, 2004).) Nor is there such a close relationship among the Defendants that knowledge of the suit should be imputed to the Doe Defendants under an "identity of interest" theory. As the Seventh Circuit has explained, "[t]he identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space, past and present forms of the same enterprise, or co-executors of an estate."

---

[17] Plaintiff has not requested that the Court take judicial notice of this document, nor would it be appropriate to do so, given that the indemnification agreement is not a public record or similar document meeting the requirements of Federal Rule of Evidence 201. The document also was not attached to the FAC or referenced therein. *See* Fed. R. Civ. P. 10(c).

*Norton v. Int'l Harvester Co.*, 627 F.2d 18, 21 (7th Cir. 1980); *see also Santora v. Starwood Hotel and Resorts Worldwide, Inc.*, No. 05-6391, 2007 WL 3037098, at \*4 (N.D. Ill. Oct. 16, 2007) (observing that in cases where identity of interest was found, courts relied on evidence of the proximity of relationship, such as unity of officers or directors, operations occurring at the same address, or employment of the same attorneys or agents for service). For instance, in *Staren v. Am. Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257 (7th Cir. 1976), cited by Plaintiff, the Court employed the "identity of interest" principle in holding that the district court erred in not allowing a corporation to be substituted for its president and his business associate. The Court emphasized that this was a "merely formal" change that did not alter the facts or issues on which the action was based. *Id.* at 1263. Here, by contrast, the amendment Plaintiff seeks to make—adding new claims against up to 1,000 separate corporations—is not "merely formal" but substantially alters the facts and issues on which her action is based. Thus, the Court concludes that Plaintiff's allegations involving the Doe transactions, and the claims premised on these allegations, do not relate back to her timely filed complaints.

For all of these reasons, the Court declines to grant Plaintiff an opportunity to replead her allegations relating to the Doe transactions and the unidentified telephone calls. These allegations are dismissed with prejudice, as are Counts I-VI of the FAC to the extent they are premised on these allegations or brought against the Doe Defendants. With these allegations dismissed, the Court turns to the remainder of the FAC pertaining to the AT&T/MediaOne merger.

## B.    Breach of Fiduciary Duty Claims

In Count I, Plaintiff alleges that AT&T breached its fiduciary duty to shareholders by

27

"caus[ing] materially misleading and incomplete information to be disseminated to Plaintiff and the class members" by Georgeson. (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 42-48.) In Count II, Plaintiff alleges that Georgeson aided and abetted AT&T's breach of its fiduciary duty by sending the information to AT&T's shareholders. (*Id.* ¶¶ 49-53.) Defendants argue that Plaintiff's breach of fiduciary duty claims fail because AT&T does not owe a fiduciary duty to its shareholders under New York law. (R. 22, Georgeson's Mot. to Dismiss ¶ 7; R. 20, AT&T's Mot. to Dismiss ¶ 4.)

New York law governs Plaintiff's breach of fiduciary duty claim because AT&T is a New York corporation.[18] *See Resolution Trust. Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir. 1994) (law of the state of incorporation presumptively applies to claims involving stewardship of the corporation), *overruled on other grounds by Atherton v. FDIC*, 519 U.S. 213 (1997); *Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 830 (N.D. Ill. 2006) (internal corporate matters are governed by the law of the state of incorporation). It is well settled under New York law that unlike corporate officers, corporations do not owe a fiduciary duty to shareholders. *Matsumura v. Benihana Nat'l Corp.*, No. 06-7609, 2007 WL 1489758, at *3 (S.D.N.Y. May 21, 2007) (dismissing breach of fiduciary duty claim because "a corporation does not have fiduciary duties to its shareholders"); *Hyman v. New York Stock Exchange, Inc.*, 848 N.Y.S.2d 51, 53 (N.Y. App. Div. 2007) ("[I]t is well settled that a corporation does not owe fiduciary duties to its members or shareholders."); *Wey v. New York Stock Exch., Inc.*, No. 06-2510, 2007 WL 1238596, at *11

_____

[18] Plaintiff does not dispute Defendants' choice of law analysis. *See Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."). Indeed, in a prior pleading Plaintiff brought a breach of fiduciary duty claim against Defendants and specified that it arose under New York law. (*Gavin I*, R. 73, Second Am. Compl. ¶¶ 28-36.)

(N.Y. Sup. Ct. Apr. 10, 2007) (dismissing breach of fiduciary duty claim because under New York law "a corporation . . . has no fiduciary duty to its shareholders").

Plaintiff does not dispute that corporations do not owe a fiduciary duty to shareholders under New York law. (R. 48, Pl.'s Combined Resp. at 38.) Instead, she argues that AT&T had a "general obligation" to speak truthfully when it chose to notify shareholders about Georgeson's services. (*Id.*) In support of this argument Plaintiff cites *Kline v. First Western Gov. Sec., Inc.*, 24 F.3d 480, 491 (3d Cir. 1994), and *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 26 (1st Cir. 1987). (R. 48, Pl.'s Combined Resp. at 38-39.) Both of these cases involved federal securities violations, and the Court finds them inapplicable to the issue of whether Plaintiff has properly stated a breach of fiduciary duty claim under New York law.

Therefore, Plaintiff's breach of fiduciary duty claim against AT&T fails as a matter of law, and for the same reasons, the claim against Georgeson for allegedly aiding and abetting AT&T in its breach of fiduciary duty also fails.[19] Because it does not appear that Plaintiff could amend her complaint to successfully state breach of fiduciary duty claims against the Defendants, and because this is Plaintiff's fourth attempt to state her claims, Counts I and II are dismissed with prejudice.

## C.    The RICO Claim

In Count III, Plaintiff alleges that Georgeson violated RICO by engaging in a scheme to defraud Plaintiff and other class members into paying a fee for a service they could have obtained for free. (R. 1, Not. of Removal, FAC ¶¶ 59-66.) Defendants argue that Plaintiff has failed to

---

[19] Because Plaintiff's claims for breach of fiduciary duty fail as a matter of law, the Court does not reach AT&T's arguments that these claims are preempted by N.Y. Gen. Bus. Law § 352 and have not been adequately pled. (*See* R. 21, AT&T's Mem. at 5-15.)

adequately plead the elements of a RICO claim in connection with the AT&T/MediaOne post-merger cleanup.[20]

Congress passed RICO in an effort to combat organized, long-term criminal activity. *Jennings v. Auto Meter Prod., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). To that end, RICO provides in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Although RICO is a criminal statute, it provides a private right of action to "[a]ny person injured in his business or property by reason of a violation." 18 U.S.C. § 1962; *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1994 (2006). Despite this private right of action, RICO was "never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings*, 495 F.3d at 472.

In order to state a claim under § 1962(c), a plaintiff must adequately allege each of the following: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings*, 495 F.3d at 472; *Goren*, 156 F.3d at 727. A RICO plaintiff is required to allege sufficient facts to support each element, and cannot simply allege these elements using boilerplate language. *Slaney v. The Intern. Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir.

---

[20] Because the allegations pertaining to the Doe transactions have been dismissed, the Court need not address Defendants' argument that the RICO claim also fails because Plaintiff cannot demonstrate that the Doe transactions proximately caused her injuries. (*See* R. 52-2, Georgeson's Reply at 5-6.). Although the allegations pertaining to the Doe transactions have been dismissed, the Court still must consider Plaintiff's RICO claim because she alleges separate RICO violations with respect to *each* post-merger cleanup, including the AT&T/MediaOne transaction. (*See* R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 57-58.)

2001); *Goren*, 156 F.3d at 727; *Starfish Invest. Corp. v. Hansen*, 370 F. Supp. 2d 759, 768 (N.D. Ill. 2005). Defendants argue that Plaintiff has failed to adequately allege a RICO enterprise, a scheme to defraud, or a pattern of racketeering activity. (R. 25, Georgeson's Mem. at 14-19.) The Court turns first to Defendants' argument that Plaintiff cannot establish the requisite pattern of racketeering activity, which we find determinative.

A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering activity committed within a ten-year period. 18 U.S.C. § 1961(5); *Jennings*, 495 F.3d at 472. "In order to curb widespread attempts to turn routine commercial disputes into civil RICO actions . . . courts carefully scrutinize the pattern requirement to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety fraud actions properly brought under state law." *Jennings*, 495 F.3d at 472-73 (internal citations omitted). To fulfill the pattern requirement, the plaintiff must satisfy the "continuity plus" relationship test: she must demonstrate at least two predicate acts that are both related to each other and that pose a threat of continued criminal activity. *Id.* at 473.

The continuity requirement was intended to give effect to Congress's intention to target long-term criminal behavior as opposed to more discrete acts of fraud. *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 242 (1989); *Jennings*, 495 F.3d at 473. Continuity can be either a "closed-ended" or "open-ended" concept. *Jennings*, 495 F.3d at 473. Closed-ended continuity involves criminal behavior that has come to an end but that went on for a substantial period of time. *Id.* Open-ended continuity involves " a course of criminal activity which lacks the duration and repetition" necessary to establish closed-end continuity, but that "by its nature projects into the future with a threat of repetition." *Id.* (internal citations omitted).

31

In determining whether there is closed-ended continuity, the Court considers the following factors: the number and variety of predicate acts; the length of time over which they were committed; the number of victims; the presence of separate schemes; and the occurrence of distinct injuries. *Jennings*, 495 F.3d at 473. The Court evaluates each of these factors to achieve a "natural and commonsense result, consistent with Congress's concern with long-term criminal conduct." *Id.* Although there is no bright-line test, the duration of the alleged racketeering activity is "perhaps the most important element." *Id.*

Defendants argue that Plaintiff cannot establish closed-ended continuity because the only fraud she has properly alleged involves a single scheme of a very short duration revolving around the mailing of the December 2000 Notice.[21] (R. 25, Georgeson's Mem. at 18-19.) In response to this argument, Plaintiff disputes that conduct must occur over a substantial period of time to satisfy closed-end continuity. (R. 48, Pl.'s Combined Resp. at 29-30.) In support she relies on Justice Scalia's concurring opinion in *H.J.* in which he critiqued the majority's "murky discussion" of what constitutes the appropriate amount of time for a closed-ended pattern of racketeering activity. *See H.J.*, 492 U.S. at 253 (Scalia, J., concurring). Justice Scalia's concurrence notwithstanding, in applying *H.J.*, the Seventh Circuit has repeatedly held that conduct occurring over a period of a few weeks or months is insufficient to establish a closed-ended pattern. *See Jennings*, 495 F.3d at 474-75 (no closed-ended continuity where alleged fraudulent acts occurred over ten-month period); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d

---

[21] The FAC indicates that the alleged fraud scheme lasted only a matter of a few months. The notice mailed to shareholders on December 15, 2000, indicates that Georgeson would be administering the exchange program until January 23, 2001. (R. 1, Not. of Removal, Ex. 5, FAC, Ex. A.)

771, 780-81 (7th Cir. 1994) (finding no pattern where alleged fraud scheme lasted nine months); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (nine-month period of alleged fraudulent activity insufficient to establish pattern); *Uni\*Quality*, 974 F.2d at 922 (fraud scheme that lasted seven to eight months was "precisely the type of short-term, closed-ended fraud that, subsequent to *H.J.*, this circuit consistently has held does not constitute a pattern.").

This is particularly true where, as here, the predicate acts involve multiple mailings relating to the same alleged fraud scheme. *Vicom*, 20 F.3d at 781. As the Seventh Circuit has explained:

> Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts . . . may be no indication of the requisite continuity of the underlying fraudulent activity. Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity.

*Id.; see also Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir. 1989) ("The plaintiffs are mistaken to emphasize the raw number of mail and wire fraud violations . . . . [W]hen the crimes of mail and wire fraud are alleged as RICO predicate acts, any fraud which generates mailings or wire communications involves as many acts of 'racketeering activity' as mailings or communications which further the scheme. This encourages bootstrapping ordinary civil fraud cases into RICO suits."). For this reason, "[t]he Seventh Circuit . . . does not look favorably on relying on many instances of mail and wire fraud to form a pattern." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990). Here, Plaintiff has alleged a short-term fraud scheme that involved multiple mailings of the December 2000 Notice in connection with the AT&T/MediaOne post-merger cleanup. Under Seventh Circuit case law, this is insufficient to establish closed-ended

33

continuity.

The Court next considers whether Plaintiff can establish open-ended continuity. The Court considers whether there is a specific threat of repetition of the alleged fraudulent conduct; whether the predicate acts are a regular way of conducting an on-going legitimate business; and whether the predicate acts can be credited to a defendant operating as part of a long-term association that exists for criminal purposes. *Vicom*, 20 F.3d at 782; *Starfish*, 370 F. Supp. 2d at 777. In the FAC, Plaintiff alleges generally that there is a "specific threat" that Georgeson will continue to perpetrate fraud on certificate holders and, further, that "Georgeson's PostMerger Cleanup service is a business service Georgeson regularly employs as a legitimate business." (R. 1, Not. of Removal, Ex. 5, FAC ¶ 63.) Plaintiff argues that these allegations are sufficient to establish open-ended continuity. (R. 48, Pl.'s Combined Resp. at 28.) To the extent Plaintiff is relying on her allegations pertaining to the Doe transactions in making this argument, those allegations have been dismissed with prejudice, leaving only the allegations pertaining to the AT&T transaction. Georgeson's alleged actions with respect to this one transaction do not establish open-ended continuity because the AT&T/MediaOne post-merger cleanup had a "natural ending point." *See Gamboa v. Velez*, 457 F.3d 703, 708 (7th Cir. 2006). Nor does the mere fact that Georgeson is still engaged in the post-merger cleanup business suffice; if it did, the risk of future fraud would theoretically apply to "every company in existence." *Peterson v. H&R Block Tax Servs., Inc.*, 22 F. Supp. 2d 795, 806 (N.D. Ill. 1998); *see also Vicom*, 20 F.3d at 783 ("bald assertions" cannot establish threat of future fraud). Thus, Plaintiff has also failed to establish open-ended continuity.

For these reasons, the Court concludes that Plaintiff has not alleged the requisite pattern

34

of racketeering activity necessary to maintain a RICO claim.[22]  Because it does not appear that Plaintiff would be able to amend her complaint to successfully state a RICO claim involving the AT&T/MediaOne post-merger cleanup, and because this is already Plaintiff's fourth complaint filed in the case, Count III is dismissed with prejudice.

### D.     The New York Consumer Protection Claim

In Count IV, Plaintiff alleges that Defendants violated New York's Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. Law § 349, in connection with the AT&T/MediaOne post-merger cleanup.  (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 67-78.)  Defendants argue that Plaintiff's NYCPA claim fails as a matter of law because Plaintiff is not a New York resident and was not deceived in New York.  (R. 22, Georgeson's Mot. to Dismiss ¶ 9.)

The NYCPA prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349.  To qualify as a prohibited act under the statute, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mutual Life. Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002).  Because the intent of the statute is to protect consumers in transactions that occur in New York state, it is not enough that a fraud scheme was "hatched" in New York; the consumer must actually have been deceived in New York. *Id.* at 1195-96.  "To apply the statute to out-of-state transactions . . . would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349." *Id.* at 1196.  Further, an overly expansive interpretation of the NYCPA

---

[22] Because the lack of a pattern is fatal to Plaintiff's RICO claim, the Court does not reach Defendants' arguments that Plaintiff has not adequately alleged a scheme to defraud or the requisite control over the alleged enterprise. (R. 25, Georgeson's Reply at 16-18.)

would also "tread on the ability of other states to regulate their own markets and enforce their own consumer protection laws." *Id.*

Contrary to Defendants' suggestion, Plaintiff's claim does not automatically fail because she is not a New York resident. *See Goshen*, 774 N.E.2d at 1196 (NYCPA was not "intended to function as a *per se* bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state."). The more difficult question is whether Plaintiff has alleged that she was deceived in a transaction that occurred in New York. In the FAC, Plaintiff alleges a connection to New York for the following reasons: Georgeson has its primary place of business in New York; Georgeson contacted Plaintiff and other class members from its headquarters in New York; AT&T and Georgeson contracted for the post-merger cleanup services in New York; Georgeson maintained a call center in New York; and "AT&T permitted Georgeson to contact certificate holders of U.S. West, using AT&T letterhead, from New York State." (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 69-72.) In her response to the motion to dismiss, Plaintiff additionally asserts that there are sufficient New York contacts because the December 2000 Notice "tells class members to mail their certificates and fees back to New York."[23] (R. 48, Pl.'s Combined Resp. at 33.)

The fact that Georgeson and AT&T have offices in New York, or that they contracted for

---

[23] The FAC does not contain this allegation, and nothing on the face of the December 2000 Notice indicates that shareholders were directed to send their certificates to New York. (*See* R. 1, Not. of Removal, Ex. 5, FAC, Ex A.) Ordinarily the Court may consider additional factual allegations contained in a response to a motion to dismiss if they are not inconsistent with the complaint, *see Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997), but this rule does not apply to fraud claims, which must be *pled* with specificity. *See Kennedy v. Venrock Assoc.*, 348 F.3d 584, 593 (7th Cir. 2003). Nevertheless, even if the Court were able to consider this additional allegation, we would not find it sufficient to save this claim from dismissal.

36

the post-merger services in New York, is insufficient to bring the alleged fraud within the purview of the NYCPA. *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (allegations that defendant advertised and conducted business in New York not sufficient); *Goshen*, 774 N.E.2d at 1196 (NYCPA "was not intended to police the out-of-state transactions of New York companies"); *Mountz v. Global Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (N.Y. Sup. Ct. 2003) (non-residents did not assert sufficient contact with New York based on sale of hair growth product developed and marketed by New York company).

Further, the case law indicates that Defendants' mailing and receipt of letters in New York is not sufficient to bring the alleged fraud under the NYCPA. For instance, in *Goshen*, even though the alleged fraud scheme concerning an insurance policy was initiated in New York, the court found that the Plaintiff was deceived in Florida, her state of residence, where she received the information and purchased the policy at issue. *Goshen*, 774 N.E.2d at 1196; *see also Mayfield v. Gen. Elec. Capital Corp.*, No. 97-2786, 1999 WL 182586, at *10 (S.D.N.Y. Mar. 31, 1999) (no NYCPA claim where defendants were located in New York but named plaintiffs were solicited in their homes in Alabama). Similarly, here, the deception (if any) occurred in Illinois where Plaintiff received the December 2000 Notice and relied on it to exchange her shares through Georgeson.

The Court finds the cases cited by Plaintiff inapposite. (*See* R. 48, Pl.'s Combined Resp. at 32-34.) She cites two cases—one of which is a trial court case decided before *Goshen* - involving the New York Attorney General's authority to police the activities of New York corporations and recover on behalf of both residents and non-residents under the NYCPA. *See People ex rel. Spitzer v. Telehublink Corp.*, 756 N.Y.S.2d 285 (N.Y. App. Div. 2003);

*People by Vacco v. Lipsitz*, 663 N.Y.S.2d 468 (N.Y. Sup. Ct. 1997). The New York Attorney General has broad enforcement powers under the NYCPA that are unavailable to private plaintiffs, and his authority to enforce the provisions of the Act over New York corporations is a distinct issue. *See Goshen*, 774 N.E.2d at 1195. The Court also finds *Lieder v. Ralfe*, 387 F. Supp. 2d 283, 294 (S.D.N.Y. 2005), distinguishable, because in that case the plaintiffs alleged that they made purchases in New York City and incurred damages there.

Because there are insufficient contacts with New York in the fraud alleged, Plaintiff has failed to state a claim for relief under the NYCPA.[24] Because it does not appear that Plaintiff could amend her complaint to successfully state a claim under the NYCPA, and because this is Plaintiff's fourth attempt to state her claims, Count IV is dismissed with prejudice.

### E.    The Illinois Consumer Fraud Claims

Finally, the Court reaches the Illinois fraud claims. In Count V, Plaintiff alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1 *et seq.*, and in Count VI, Plaintiff alleges a common law fraud claim. (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 79-96.) Defendants argue that both claims fail as a matter of law because Plaintiff cannot show that any of the statements in the December 2000 Notice were false or misleading. (R. 22, Georgeson's Mot. ¶ 10; R. 20, AT&T Mot. ¶ 6.) AT&T additionally argues that Plaintiff fails to allege that AT&T acted with the requisite scienter. (R. 20, AT&T's Mot. ¶ 6.)

---

[24] Because Plaintiff's claim fails on this threshold issue, the Court does not reach AT&T's argument that Plaintiff has not adequately alleged that the December 2000 Notice contained a materially misleading act or omission covered by the NYCPA. (R. 20, AT&T's Mot. to Dismiss ¶ 5; R. 51, AT&T's Reply at 2-3.)

## 1.    The ICFA Claim

The ICFA prohibits unfair or deceptive acts or practices, and provides a cause of action by any person who suffers actual damages as a result of a violation.  815 ILCS 505/10a(a). "Illinois courts have repeatedly stressed the 'broad protective philosophy' of this legislation," which was intended to provide protection broader than that afforded by common law fraud doctrines. *Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997).  To state a claim under the ICFA, the plaintiff must allege: a deceptive act or practice by the defendant; the defendant's intent that the plaintiff rely on the deception; the deception occurred in a course of conduct involving trade and commerce; and actual damages proximately caused by the deception. *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007).  Defendants argue that Plaintiff cannot allege an actionable misstatement or omission because nothing in the December 2000 Notice was false, and further, because "Plaintiff was mailed two other notices plus a proxy statement that explained the option to use AT&T's transfer agent to make the exchange." (R. 25, Georgeson's Mem. at 23; *see also* R. 51, AT&T's Reply at 3-5.)

The omission or concealment of a material fact is actionable under the ICFA.  815 ILCS 505/2; *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 595 (Ill. 1996).  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 675 N.E.2d at 595.  To withstand a motion to dismiss, the plaintiff must allege that defendants made a material omission and that the plaintiff would have acted differently had she known the omitted information. *See id.* (plaintiff adequately pled fraud based on material omission where she alleged that defendant was aware of safety problems with vehicle

39

and failed to disclose them; that safety problems constituted material information; and that plaintiffs would not have purchased the vehicle if defendant had disclosed the information); *see also Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66 (Ill. App. Ct. 2001) (plaintiff adequately alleged fraud based on material omission); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859 (Ill. App. Ct. 1997) (same).

Here, Plaintiff alleges that Defendants violated the ICFA by omitting the material information that a fee-free exchange option was still available to them, instead suggesting that shareholders' only option was to redeem through Georgeson or lose the value of their shares to the state. (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 13-14, 20, 84.) Plaintiff alleges that she and other shareholders exchanged their shares through Georgeson following the December 2000 Notice and incurred damages as a result. (*Id.* ¶¶ 6, 24, 27, 30, 85-86.) Plaintiff further alleges that Defendants intended that shareholders rely on their false and misleading statements to exchange their fees through Georgeson. (*Id.* ¶ 21.) At this stage, these allegations are sufficient to state claim under the ICFA.[25]

Even though Defendants are correct that the December 2000 Notice states that the exchange through Georgeson was "voluntary," shareholders may have interpreted this language as meaning that they also had the option of simply holding on to their certificates. (*Id.*, Ex. A.) There is no hint in the December 2000 Notice that there were other options available for

---

[25] The Court nevertheless disagrees with Plaintiff that Judge Posner already "rejected" Defendants' arguments that the December 2000 Notice was not fraudulent. (*See* R. 48, Pl.'s Combined Resp. at 36-37.) The questions and statements made by judges at oral argument are not binding statements of law. *Rangel v. United States*, 155 F. Supp. 2d 949, 954 (N.D. Ill. 2001). Moreover, in the Seventh Circuit's published opinion—authored by Judge Posner—the court expressly disavowed any opinion of the merits of Plaintiff's state-law fraud claims. *Gavin*, 464 F.3d at 638.

40

*exchanging* the shares. (*Id.*) Even if shareholders received the two prior notices regarding the fee-free exchange option, they may have simply inferred from the wording of the December 2000 Notice that this option was no longer available to them because they had delayed in responding. These are issues that must be sorted out later in the litigation; whether an omission is material in light of all the circumstances is a question of fact.[26] *See White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 550 (Ill. App. Ct. 2006); *Obermaier v. Obermaier*, 470 N.E.2d 1047, 1052 (Ill. App. Ct. 1984). At this stage, Plaintiff has pled enough to withstand a motion to dismiss.

Defendants also argue that Plaintiff's fraud claims fail because she cannot show that her damages were proximately caused by the December 2000 Notice. (R. 25, Georgeson's Mem. at 23-24; R. 51, AT&T's Reply at 7.) According to Defendants, any damages incurred by shareholders in exchanging through Georgeson were caused by their own "superficial or careless" reading of the prior notices advising them of the free-free exchange option. (R. 25, Georgeson's Mem. at 24.) Unlike a common law fraud claim, a claim under the ICFA does not require the plaintiff to prove that she actually relied on the deception. *Sound of Music Co.*, 477 F.3d at 923. Nevertheless, the plaintiff must demonstrate that the defendant's actions

---

[26] The Court is unpersuaded by Defendants' reliance on *Starr v. Georgeson Shareholder, Inc.*, 412 F.3d 103 (2d Cir. 2005), which involved a fraud claim brought under Section 10(b) of the Exchange Act. This Court must look to Illinois law to determine whether Plaintiff has stated a claim under the ICFA. Even assuming Defendants are correct that the "materiality" analysis under the Exchange Act is applicable here, information is considered "material" for purposes of the Exchange Act if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to invest. *Basic, Inc., v. Levinson*, 485 U.S. 224, 231 (1988). This is a fact-specific inquiry, *id.* at 240, which requires "delicate assessments of the inferences a reasonable [investor] would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *TSC Indus., Inc., v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Thus, dismissal of Plaintiff's claim would be inappropriate in any event.

proximately caused her injuries. *Connick*, 675 N.E.2d at 595; *Chandler v. Amer. Gen. Fin., Inc.*, 768 N.E.2d 60, 70 (Ill. App. Ct. 2002). At the pleading stage, however, "[t]he required allegation of proximate cause is minimal since that determination is best left to the trier of fact." *Connick*, 675 N.E.2d at 595 (plaintiff adequately alleged proximate cause with allegations that purchases occurred after alleged fraudulent statements, and there were no facts in the complaint showing an intervening cause that would break the chain of causation); *Chandler*, 768 N.E.2d at 70 (plaintiffs' allegations that transaction resulted in extra costs that were effectively concealed by defendant and that, had information been provided to them, they would not have entered into the transaction were sufficient to defeat motion to dismiss).

Here, Plaintiff alleges that Defendants omitted a material fact from the December 2000 Notice regarding the fee-free exchange option available to them, and that she and other shareholders acted on the basis of that omission, exchanged their shares through Georgeson, and incurred damages as a result. (R. 1, Not. of Removal, Ex. 5, FAC ¶¶ 6, 14, 20, 21, 84.) These allegations satisfy the "minimal" showing needed to support a claim that Defendants proximately caused Plaintiff's injuries. *See Connick*, 675 N.E.2d at 595.

Plaintiff has also adequately pled scienter. (*See* R. 51, AT&T's Reply at 9.) Plaintiff alleges that both Defendants intended that shareholders rely on their false and misleading statements to exchange their fees through Georgeson. (*Id.* ¶ 21.) At this stage, the Court must accept Plaintiff's well-pleaded allegations as true. *Christensen*, 483 F.3d at 457; *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of a person's mind may be alleged generally."). Additionally, even though Georgeson drafted the December 2000 Notice, it can be inferred from the FAC that AT&T was aware of its contents, since it was on AT&T's letterhead.

42

*See Gavin,* 464 F.3d at 638 ("Presumably Georgeson showed AT&T the letter before mailing it; it was, after all, on AT&T's stationery.") The email attached to the FAC also indicates that AT&T was involved in the process of notifying shareholders about Georgeson's exchange service, and even expressed some reservations about the fees Georgeson was charging. (R. 1, Not. of Removal, Ex. 5, FAC ¶ 25 & Ex. B.) In short, there is enough in the FAC to withstand a motion to dismiss on the ICFA claim.

## 2. The Common Law Fraud Claim

To prove common law fraud, the plaintiff must show that: the defendants intentionally made a false statement of material fact or failed to disclose a material fact; the plaintiff had a right to rely on the false statement or omission; the statement or omission was made for the purpose of inducing reliance thereon; the plaintiff in fact relied on the statement or omission; and the plaintiff suffered injury as a direct result. *Fox v. Heimann,* 872 N.E.2d 126, 138 (Ill. App. Ct. 2007). Defendants argue that Plaintiff's common law fraud claim fails because, among other reasons, she has not alleged that Defendants had a duty to disclose the fee-free exchange option in the December 2000 Notice. (R. 25, Georgeson's Mem. at 24; R. 51, AT&T's Reply at 8-9.) Plaintiff's only response to this argument is that "it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment." (R. 48, Pl.'s Combined Resp. at 36.) Plaintiff is correct as far as the ICFA claim goes. *See Connick,* 675 N.E.2d at 593; *Celex Group, Inc. v. Exec. Gallery, Inc.,* 877 F. Supp. 1114, 1129 (N.D. Ill. 1995). However, in a common law fraud claim based on an omission, the plaintiff must allege a duty to disclose by the defendant. *See Orlak v. Loyola Univ. Health Sys.,* --- N.E.2d ----, 2007 WL 4562822, at *9 (Ill. Dec. 28, 2007) (in absence of fiduciary or other

43

confidential relationship between plaintiff and defendant, defendant's silence does not constitute fraud); *Connick*, 675 N.E.2d at 593 (affirming dismissal of common law fraud claim where plaintiffs failed to allege they were in fiduciary or other confidential relationship with defendants such that they had duty to disclose); *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 765 (Ill. App. Ct. 2003) ("In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak.").

Plaintiff has not pointed the Court to any allegations in the FAC suggesting that Defendants were in a confidential or other fiduciary relationship with shareholders, nor can the Court discern any plausible basis upon which such a duty would exist under the circumstances of this case.[27] Thus, Plaintiff has failed to adequately allege a claim for common law fraud. *See Connick*, 675 N.E.2d at 593. Because it does not appear that Plaintiff can amend her FAC to state a common law fraud claim against Georgeson and AT&T, and because the FAC represents Plaintiff's fourth attempt to state her claims, Count VI is dismissed with prejudice.

## Plaintiff's Motion for Class Certification

In her motion for class certification, Plaintiff seeks certification of three different plaintiff classes pertaining to the various claims raised in her FAC, specifically: "The Georgeson PostMerger Cleanup Service Victims Class," consisting of all certificate holders of any company who were induced to exchange their certificates through Georgeson and were charged fees in

---

[27] Plaintiff alleged in the context of Count I that AT&T had a fiduciary duty to shareholders, but this claim was dismissed because corporations have no such duty under New York law. (*See infra* Section A.) The FAC is devoid of any allegations regarding a fiduciary or other confidential relationship between Plaintiff and Georgeson.

44

excess of $20.00; "The AT&T/U.S. West Merger Sub-Class," consisting of all persons who exchanged their U.S. West shares through Georgeson and were charged fees in excess of $20.00; and "The Illinois Sub-Class," consisting of all Illinois resident members of either the Georgeson Class or the AT&T/U.S. West Merger Sub-Class. (R. 38, Pl.'s Mot. for Class Cert. at 1) Plaintiff also seeks certification of a Defendant Class, with Georgeson and AT&T as class representatives, consisting of all companies who engaged Georgeson in connection with a post-merger cleanup whereby Georgeson charged per-share fees to certificate holders. (*Id.*)

Many of the claims forming the basis for the class definitions have been dismissed by this opinion; the motion is denied to the extent it seeks class certification on these claims. As to the remaining portion of the motion, the Court notes that the motion contains no case citations or legal argument as to why certification should be granted. *See Payton*, 308 F.3d at 678 (bare bones request for class certification insufficient). Because this opinion has dramatically altered the scope of the litigation, the Court finds the most appropriate course is to deny the remainder of Plaintiff's motion without prejudice to renewal in a properly supported motion seeking class certification on the one remaining claim.

One final matter requires attention. As a result of this opinion, Plaintiff's RICO claim has been dismissed with prejudice, as have the allegations pertaining to the Doe Defendants, which formed the basis for Defendants' removal under CAFA. All that is now left of this case is a state-law fraud claim. Under these circumstances, the Court has discretion to decline to exercise supplemental jurisdiction over the remaining claim. 28 U.S.C. § 1367(c)(3); *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). In deciding how to exercise our discretion, the Court considers the Seventh Circuit's view that this case involves "garden-

variety issues of state-law consumer fraud" that should be litigated in state court. *See Gavin*, 464 F.3d at 640. Further, although Plaintiff's case was litigated in federal court for several years before the remand, very little occurred relative to the state-law consumer fraud claim, because the Court determined early in the proceedings that Plaintiff's state claims were preempted by SLUSA. (*See Gavin I*, R. 12, Minute Ord.) After seven years of litigation, Plaintiff is essentially back to "square one" on the state-law fraud claim, and the Court finds little to be gained in terms of judicial economy by keeping the case in federal court.

For these reasons, the Court declines to retain supplemental jurisdiction over Plaintiff's remaining state law claim. Instead, the Court leaves this claim in the capable hands of our state court colleagues.

## CONCLUSION

Georgeson's Motion to Dismiss (R. 22) is granted in part and denied in part; AT&T's Motion to Dismiss (R. 20) is granted in part and denied in part; Plaintiff's motion for class certification (R. 38) is denied without prejudice to the extent stated in this opinion; and the parties' motions to take judicial notice (R. 24, 28, and 50) are each granted. Judgment is entered consistent with this opinion, and the case is remanded to state court for further proceedings pursuant to 28 U.S.C. § 1447(c) and (d).

ENTERED: _____
Ruben Castillo
United States District Judge

Dated: February 12, 2008

46